## FIDELITY–PHENIX FIRE INS. CO. v. HAYWOOD et al.

### No. 6436.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1934.

T. M. Galphin, Jr., of Louisville, Ky. (Gordon, Laurent & Ogden, of Louisville, Ky., on the brief), for appellant.

P. S. Bradford, of Columbus, Ohio (Thos. C. Fisher, of Louisville, Ky., on the brief), for appellees.

Before HICKS and SIMONS, Circuit Judges, and NEVIN, District Judge.

SIMONS, Circuit Judge.

From a judgment on a fire insurance policy jointly recovered by the appellees, the appellant insurer appeals. The appellee Haywood is the insured named in the policy, and by the standard mortgage clause attached thereto the loss was payable to "W. L. Dawson, mortgagee or trustee, as his interest may appear."

The suit was defended on the ground that the assured was not the sole and unconditional owner in fee simple of the insured property, as he was required to be under the terms of the policy; that Dawson was neither a mortgagee nor trustee, but simply an agent of the court to conduct the sale, and having no lien upon the property; that proofs of loss were not furnished within sixty days of the date of the fire, as required; that if Dawson is entitled to recover at all he may recover only the amount of the bid by Haywood at the sale, and not the face of the policy, and upon such recovery the insurer would be entitled to be subrogated to his lien. The plaintiffs in response to such defenses assert Haywood's equitable ownership of the property insured, Dawson's lien as master commissioner, a waiver of the proof of loss by the denial of all liability on the part of the insurer, and a waiver of all defenses by the insurer's acceptance of premiums after the fire.

In so far as the facts are undisputed, they follow: To settle an estate a number of parcels of real estate were offered for sale under a judgment of the circuit court of Oldham county, Ky., by Dawson, its master commissioner. The judgment provided that the property might be sold on terms, the purchaser in that event to be required to execute a bond for the purchase price, with reservation of lien as additional security. Haywood was the highest bidder on three tracts, including that on which the insured building was situated. He tendered bonds as required, but the commissioner declined to approve them because of insufficient surety. Thereafter, and while his status as bidder remained unchanged, he took out the policy here in question in the sum of $4,500, though his bid was $2,350. On October 25, 1931, the building on the property was destroyed by fire. Two days later the commissioner made his report to the court, advising it of his refusal to approve the bonds. Haywood moved to confirm the sale. His motion was continued to the February term of court by an order reciting that Haywood would be given until that term to execute sufficient bonds. On February 25, 1932, and after suit on the policy was begun, the commissioner's report of sale was confirmed, and the original purchase money bonds approved.

The facts above recited are covered by a stipulation, which reserved to the parties the right to object to the competency and relevancy of the facts therein stated. In pursuance of such reservation, the appellant excepted to the recitals which relate to the confirmation of sale, and execution of deed to Haywood, because they dealt with circumstances occurring after the loss and following the commencement of the instant suit.

The first question to be determined is whether Haywood had such insurable interest in the property as was required by the policy. The insurance contract contains the following provision: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the assured in fee simple. * * *" To satisfy the requirement that the insured must be an unconditional and sole owner of the insured property under clauses identical with or similar to the above, it has been held that legal ownership is not required, equitable ownership being sufficient, Royal Insurance Co. v. Bailey, 35 F.(2d) 916 (C. C. A. 6); Milwaukee Mechanics' Insurance Co. v. Rhea & Son, 123 F. 9 (C. C. A. 6); Alliance Insurance Co. v. Enders, 293 F. 485 (C. C. A. 9), and this in fact appears to be conceded.

The question therefore presented may be stated thus: Was Haywood as the successful bidder for the insured property, after furnishing a bond, the equitable owner of it, notwithstanding the surety was not approved nor the sale confirmed until after the loss occurred? Since this question relates to title

to real property, Haywood's status as owner must be determined by the law of Kentucky.

The court below in holding that Haywood was the equitable owner relied upon Hughes v. Swope, 88 Ky. 254, 1 S. W. 394. The rule there declared is that the purchaser at a decretal sale acquires vested equitable title from the time of his purchase until the confirmation, subject only to defeasance for causes not here involved, and by confirmation his title becomes perfect from the date of purchase. This is upon the ground that purchasers at decretal sales must suffer the damage to property by destruction of buildings or other deterioration between time of sale and confirmation.

■ While some of the Kentucky cases following Hughes v. Swope seem to cast doubt upon the rule there announced, and while it has been indicated, as in Manhattan Insurance Co. v. Stein & Zang, 5 Bush (68 Ky.) 652, that it is the confirmation of the sale that determines the effective transfer of ownership, it is, we think, clear, from an examination of the later Kentucky cases, that the principle is now established that where at the time a sale is made no valid ground for setting it aside exists, the accepted bidder is entitled to his purchase, and is the equitable owner. Vance's Administrator v. Foster & Ray, 9 Bush (72 Ky.) 389; Bond v. Brand's Trustee, 115 Ky. 632, 74 S. W. 673; Cook's Administrator v. Franklin Fire Insurance Co., 224 Ky. 360, 6 S.W.(2d) 477, 479; Smith et al. v. National Union Fire Insurance Co., 239 Ky. 106, 39 S.W.(2d) 189. The doctrine of the Stein & Zang Case, that there is no transfer of ownership upon decretal sale until confirmation, is expressly repudiated and overruled in the two cases last cited.

■ The appellant seeks to distinguish the instant case on its facts from Cook's Administrator v. Franklin Fire Insurance Co., supra, on the ground that the commissioner here having declined to approve the surety on Haywood's bond, there was no compliance with the terms of sale. The sale was, however, confirmed by the Oldham county circuit court, and the bond originally tendered to the commissioner was approved. We think this is conclusive upon us. As was said by the Kentucky court: "When exceptions have been filed and the question is presented to the court, whether a sale shall be set aside or confirmed, nothing which has occurred subsequent to the sale may be taken into account by the court, but it must be decided on the status existing when the sale was made. In this instance it was found that all the steps

requisite to a valid sale had been taken, and that when the sale was had no inequitable conduct had been engaged in by or on behalf of either those whose property was being sold or those who purchased it. Hence when the question of setting aside or confirming this sale was presented to the court, though the dwelling house on the lot involved had been destroyed by fire after the sale was had, that afforded no ground for setting it aside and none other appearing the sale was confirmed." We are aware of no valid reason for refusing to consider the confirmation of sale and the approval of bond by the court because these things took place after the instant suit was begun. The Kentucky court had jurisdiction of the subject-matter and of the property prior to the beginning of this suit. Its order did not change the status of Haywood's relation to the property as its equitable owner, but was merely declaratory of what that status was at the time of sale, and of his compliance with its terms.

■ The policy provides that if fire occurs the insured shall give immediate notice of loss in writing to the company, and: "Within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by the said insured," etc. It also provides that: "No suit for the recovery of any claim shall be sustainable until after full compliance by the insured with all the foregoing requirements, or unless commenced within twelve months next after the fire." The District Judge concluded as a matter of law that because of the absence of a forfeiture clause, and because the policy provided that no suit or action should be sustainable until after full compliance by the insured with all requirements, the failure to make proof of loss within the time prescribed did not defeat recovery, but simply suspended the right to bring suit until proof of loss had been made. With this conclusion we do not agree. Limitations such as this, if reasonable, are valid, and compliance therewith is a condition precedent to the enforcement of the policy. Callen v. Massachusetts Protective Association, 24 F.(2d) 694 (C. C. A. 8); Metropolitan Casualty Insurance Co. v. Johnston, 247 F. 65 (C. C. A. 3); Maryland Casualty Co. v. Massey, 38 F.(2d) 724, 71 A. L. R. 1428 (C. C. A. 6); Niagara Fire Insurance Co. v. Pospisil, 52 F.(2d) 709, 79 A. L. R. 404 (C. C. A. 8). The contention that the use of the word "until" permits the filing of proofs of loss at any time before suit, was specifically rejected in the last of the cases cited, and we think rightly so. We agree with the opinion there-

in holding that such interpretation robs the limitation as to time within which proofs of loss must be made of any significance whatever. The question being one of general law, we are not thereon governed by the holdings of the courts of Kentucky, but follow our own and other federal decisions.

Notwithstanding our disagreement with the court below as to the interpretation of the policy with respect to the time for filing proofs of loss, we nevertheless agree with its conclusion that the requirement of the policy was waived. The loss occurred on October 25, 1931. On December 16, 1931, the local agent of the insurer by registered letter notified Haywood that his policy was canceled as of the date issued, for the reason that neither at that time nor since was the title to the property, either equitable or legal, vested in him. Clearly this was a repudiation of liability, and if authorized by the insurer, rendered it futile under familiar principles for the insured to file the required proofs. The only question that is open with respect to waiver is whether the agent was authorized to represent the company in denying liability. The stipulation contained in the policy that a waiver to be effective must be written upon or attached to the policy does not stand in the way, for it is settled that such stipulation has reference to those provisions and conditions which constitute part of the contract of insurance, and does not apply to a waiver after the loss occurs, of stipulations in respect of things to be done subsequent to the loss as prerequisite to adjustment and payment. Concordia Insurance Co. v. School District, 282 U. S. 545, 551, 51 S. Ct. 275, 75 L. Ed. 528; Continental Insurance Co. v. Fortner, 25 F.(2d) 398, 401 (C. C. A. 6).

We come then to the somewhat narrow question as to the authority of the local agent to bind the insurer by a denial of liability. The evidence of the agent Rieger was that he was authorized to solicit business, issue policies, and collect premiums. Clearly this authority does not include adjustments of loss. The adjuster was Harrison. Harrison did not deny liability, although he refused to furnish the assured with proof of loss forms. We do not, however, base our conclusion as to waiver upon any acts of Harrison. It was Rieger, however, who returned the premium, and notified the assured of the cancellation of his policy. Such acts are not ordinarily within the authority of one employed to solicit business. The authority to cancel a policy, and the statement of the reasons for such cancellation, are inseparably associated. The inference is inescapable that Rieger had either general authority to cancel policies for the reasons given or was expressly empowered to do so in the instant case. Aside from this the insurer asserts the cancellation of the policy by it. It cannot now deny its agent's authority to send the notice of cancellation, nor to specify the reasons upon which such cancellation was based, and this is in our view equivalent to a complete denial of liability. It would be indeed difficult to distinguish between a notice to cancel after loss and refusal to pay, and in so far as waiver may be based on factual issues, the court's findings are conclusive; both parties having moved for directed verdict.

Holding as we do that Haywood had an insurable interest within the terms of the policy, and that proofs of loss were waived by an agent of the company having sufficient authority so to do, we see no occasion for discussing questions relating to the existence of or extent of Dawson's lien. The insurer being liable for the full amount of the policy is not concerned with the respective interests of the plaintiffs in the judgment. If it is in any doubt as to whether it may safely pay the judgment to either or both parties, it can protect itself by paying the money into the registry of the court.

The judgment below is affirmed.