## United States Casualty Company v. Campbell.

(Decided May 24, 1912.)

### Appeal from Garrard Circuit Court.

Insurance—Accident—Action to Recover—Misrepresentations As to Good Health, etc.—Whether Fraudulent or Material a Question for the Jury.—In an action to recover on an accident insurance policy, held that the question whether or not certain misrepresentations made by the insured with reference to the condition of his health, his habits, and prior treatment by a physician, were fraudulent or material, was for the jury: and in the absence of evidence showing that the misrepresentations were fraudulent, or were substantially untrue, and if the truth had been known the policy would not have been issued, and with practically no evidence to the contrary, it cannot be said that a finding in favor of the plaintiff is flagrantly against the evidence.

WILLIAM HERNDON for appellant.

SMITH & SMITH, R. H. TOMLINSON and O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On July 20, 1909, the Empire State Surety Co., a corporation organized under the laws of New York, and then doing business in the State of Kentucky, issued to Richard D. Campbell an accident policy insuring him against bodily injury sustained while the policy was in

force, exclusively through accidental means, and resulting directly and independently of all others causes in Capital Loss, as provided in Schedule A of the policy. Among the Capital Losses set forth in Schedule A is the loss of sight of one eye, complete, irrecoverable and irremedial. By the policy, the amount of recovery for the loss of an eye in case of ordinary accident was fixed at $2,750. In case of accident while insured was a passenger in a public conveyance provided for passenger service by a common carrier, the liability was fixed at double that sum, or $5,500. The policy also contained a provision for payment of surgical and hospital treatment. When the insured obtained the policy, he paid the premium thereon, amounting to $15. When the policy was issued, it was good for one year. Upon the expiration of the first year, another premium of $15 was paid, which extended the policy to July 20, 1911.

The policy provided that it was issued in consideration of the premiums and of the statements made in the Schedule of Warranties, and warranted to be true, by the acceptance of the policy. Among the items under "Schedule of Warranties" are the following:

"15. a. I have not been afflicted with hernia, cateract, fits, varicose veins or paralysis, or suffered the loss of a limb; b. I am not deformed, have no impairment of hearing or of the sight of either eye; c. My habits are correct and temperate, and I am physically sound; except as follows: (No exceptions.)"

"16. I have not been disabled, nor have I received medical or surgical attention during the past five years, except as follows: (No exceptions.)"

During the latter part of the year 1910, the Empire State Surety Company re-insured all its accident policies in the United States Casualty Company, which agreed and undertook to perform the conditions of same.

Alleging that while riding as a passenger on a Louisville & Nashville Railroad train from Paint Lick, Ky., to Lowell, Ky., in a car provided for the carriage of passengers, he was struck in the right eye by some hard substance, which completely, irrecoverably and irremedially destroyed the sight thereof, appellee, Richard D. Campbell, brought this action against defendant, United States Casualty Co., to recover the sum of $5,500, and interest, together with the sum of $125 surgeon fees and hospital bills which he claimed were incurred by him by reason of the injury. After denying the injury,

defendant, by a second paragraph, pleaded contributory negligence. In its third paragraph, it pleaded that it was induced to issue the policy by the fraudulent and material representations made by plaintiff in items 15 and 16 in the Schedule of Warranties, with reference to the condition of his health, the character of his habits, and his prior treatment by physicians, and had the truth been known, it would not have issued the policy. Evidence was heard, and a trial before a jury resulted in a verdict and judgment in favor of plaintiff for $5,500, with interest from March 13, 1911, and costs. From that judgment the United States Casualty Co. appeals.

The evidence for plaintiff is to the effect that he first applied for an accident policy to the agent of the Empire State Surety Co., at Lexington. From him he obtained an application. He afterwards sent the application to the company's agent at Louisville, from whom he subsequently received the policy. The only statement he made with reference to his previous treatment by a physician was that he had been treated for catarrh. The only statement he made with reference to his habits was "I suppose my habits are as good as the average." After receipt of the policy, he admits that he wrote the agent in reference to a mistake in his name, and in his occupation, but did not call his attention to any other mistakes in the Schedule of Warranties. The accident to his eye happened shortly after eight P. M. on March 13, 1911. At that time, he was a passenger on one of the Louisville & Nashville Railroad trains enroute to Lowell, Ky. While in the coach, he raised a window. Shortly thereafter, a cinder, or some hard substance, struck him in the eye, which pained him greatly at the time. Thinking he had merely gotten a cinder in his eye, which condition would soon be relieved, he did not consult a physician until about four days thereafter. He then went to see Dr. Dunn at Richmond, Ky., who advised him to see Dr. Stucky at Lexington, Ky. The latter did all in his power to restore his sight. At the time of the trial, plaintiff could not see out of his eye. He admitted having been previously treated for catarrh by Dr. Stucky. He also admitted that, owing to the fact that he had suffered a great deal, he had become addicted to the occasional use of morphine to relieve his suffering. He also admitted that his nose was sunken, and some of the small bones had been removed. When he was released from treatment by Dr. Stucky

he was assured and understood that he was practically cured of catarrh. He is corroborated in his testimony by that of the physicians who attended him. Dr. Stucky says that the sight of the eye is permanently gone. Dr. Stucky also testifies to the fact that he treated plaintiff for catarrh, but was of the opinion that it was incurable. Plaintiff's arm was exhibited to the jury, and showed frequent use of a hypodermic needle. Dr. Stucky also testifies that he had treated him for the morphine habit, but saw no evidence of the fact that he was suffering from any other disease than that of catarrh.

For defendant, two physicians testified that they examined plaintiff, and found him suffering from syphilis and that in their opinion, this disease was sufficient to account for the injury to his eye. They are also of the opinion that the condition of his nose was due rather to syphilis than to catarrh.

The agent who issued the policy testifies that he prepared the application himself from the letter written by plaintiff. Neither the letter nor the application claimed by plaintiff to have been filled out, was produced at the trial. The agent filled out the application from the statements in plaintiff's letter that his health was good.

For appellant, it is insisted that the court erred in not directing a verdict in its favor, on the ground that the misrepresentations by plaintiff were both fraudulent and material.

Section 639 of the Kentucky Statutes is as follows:

"All statements or descriptions in any application for a policy of insurance shall be deemed and held representations, and not warranties; nor shall any representation, unless material or fraudulent, prevent a recovery on the policy."

The difference between warranties and representations as to past facts is this: In the case of warranties, the answers must be literally true, and an answer that is not literally true will avoid the policy. Where the statements are representations, however, the answers must be substantially true, and a misrepresentation that is not material or fraudulent will not prevent a recovery on the policy. A misrepresentation is material when, if the truth had been known, the policy would not have been issued.

The issues in this case were all submitted to the

jury by instructions which were more favorable to the
defendant than it was entitled to. Under the evidence
in this case it may be doubted if the issue of fraud
should have been submitted to the jury. According to
defendant's own evidence, the statements in the ap-
plication were made by the agent of the company who
issued the policy. He filled out the application from
the mere statement in plaintiff's letter that the plain-
tiff was in good health. His filling out the statements
in the application contrary to the facts did not conclu-
sively show fraud on the part of the plaintiff.

But notwithstanding the fact that the application
was filled out by the agent and never signed by the
plaintiff, it is contended that the statements in the
"Schedule of Warranties'' are material, because the
policy was issued upon the express condition that they
were true. Even if this position be correct, still the
materiality of the misrepresentations, if any, we think,
was a question for the jury. It must be remembered
that the question of previous treatment by a physician,
or of soundness of health, or of habits, may not be so
material in the case of an accident policy as in the case
of a health or life policy. To a certain extent, every
allegation with reference to one's health, or his pre-
vious treatment by a physician has a direct bearing
upon whether or not he is a suitable risk for a health or
life policy. On the other hand, in the case of an acci-
dent policy, it is only those diseases which increase the
chances of bodily injury which if the truth had been
stated, would be so likely to cause the company not to
accept the risk. It is not at all improbable that if the
insurer had in this instance known that plaintiff had
suffered from, or been treated by a physician for
catarrh, or had suffered from syphilis, or had indulged
in the occasional use of morphine, it would have re-
fused to issue the policy. At any rate, we cannot say
as a matter of law that it would have refused to do so.
The question was for the jury, and in the absence of
strong and convincing evidence that such is the custom
and practice of companies issuing accident policies,
and with practically no evidence to the contrary, we
cannot say that the finding of the jury is flagrantly
against the evidence.

We deem it unnecessary to discuss at length the
other grounds urged for reversal. It is sufficient to

say that we have carefully considered the record, and find no error prejudicial to the substantial rights of appellant.

Judgment affirmed.